**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION AT LAFAYETTE**

| | | |
|---|---|---|
| **ROD SCOTT, as Administrator of the Estate of LENNIS K. MITCHELL,** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **No. 4:26 CV 11** |
| **CITY OF LAFAYETTE, INDIANA; and JOHN DOES 1-7, in their individual and official capacities as officers of the Lafayette Police Department,** | ) | |
| **Defendants.** | ) | |

**OPINION and ORDER**

## I. BACKGROUND [1]

On September 22, 2025, officers of the Lafayette Police Department responded to a reported domestic disturbance at a residence in Lafayette, Indiana, involving Lennis K. Mitchell and his girlfriend. (DE # 1 ¶ 8.) Mitchell fled the scene on foot, and six or seven officers pursued him. (*Id.* ¶ 9.) The officers found Mitchell hiding in bushes near a porch, and he emerged with his hands raised in surrender. (*Id.* ¶ 10.) The officers grabbed Mitchell, forced him to the ground, and restrained him in a prone position. (*Id.* ¶ 11.)

While prone, Mitchell repeatedly complained that he could not breathe and was audibly hyperventilating. (*Id.* ¶ 12.) He asked to be stood up so that he could breathe,

[1] The following facts are drawn from plaintiff's complaint and are accepted as true for present purposes. *United States ex rel. Berkowitz v. Automation Aids, Inc.*, 896 F.3d 834, 839 (7th Cir. 2018).

and asked why he could not be searched while standing. (*Id.*) The officers refused, telling him that they would stand him up only after they had finished searching him. (*Id.*) Mitchell remained prone for more than a minute and a half. (*Id.*) When the officers eventually lifted him to his feet, he bent over and said that he was about to faint. (*Id.* ¶ 13.) No medical assistance was summoned. (*Id.*)

Mitchell was placed in a police cruiser, where he was short of breath and disclosed that he suffered from asthma, and the officers continued to question him without calling for medical aid. (*Id.* ¶ 14.) Shortly after he was fully placed in the cruiser, Mitchell became unresponsive. (*Id.* ¶ 15.) The officers then summoned help. (*Id.*) He was transported to a hospital and diagnosed with cardiac arrest resulting from a lack of oxygen to the brain. (*Id.* ¶ 16.) He never regained consciousness, and he died on September 28, 2025. (*Id.* ¶¶ 17-18.)

Rod Scott, as administrator of Mitchell's estate, filed this lawsuit against the City of Lafayette and John Does 1-7, setting forth various state and federal claims, including alleged constitutional rights violations under 42 U.S.C. § 1983. (DE # 1.) The City moved for partial judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) as to Count III (a Section 1983 claim against the City under *Monell v. Department of Social Services*, 436 U.S. 658 (1978)), Count V (state law negligence and negligent training and supervision), and Count VI (state law indemnification).[2] (DE ## 10, 11.) Plaintiff responded (DE # 14), and the City replied (DE # 15). The motion is now ripe for ruling.

[2] The City did not move for judgment with respect to Count IV, plaintiff's wrongful death claim under state law.

## II. LEGAL STANDARD

In reviewing a motion for judgment on the pleadings under Rule 12(c), the court utilizes the same standard that is applied when reviewing a motion to dismiss pursuant to Rule 12(b)(6). *Pisciotta v. Old Nat'l Bancorp.*, 499 F.3d 629, 633 (7th Cir. 2007). Under that standard, the court "take[s] the facts alleged in the complaint as true, drawing all reasonable inferences in favor of the plaintiff." *Id.* In assessing the pleading of those facts, the court must be cognizant that a complaint filed in federal court is governed by the liberal notice-pleading requirements of the Federal Rules of Civil Procedure, which only requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To satisfy Rule 8(a), "the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

"While the federal pleading standard is quite forgiving, . . . the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ray v. City of Chicago*, 629 F.3d 660, 662-63 (7th Cir. 2011); *Twombly*, 550 U.S. at 555, 570. A plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To meet this standard, a complaint does not need detailed factual allegations, but it must go beyond providing "labels and conclusions" and "be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citing *Sanjuan v. Am. Bd. of Psychiatry & Neurology*, 40 F.3d 247,

251 (7th Cir. 1994), among other authorities). As the Seventh Circuit explained, a complaint must give "enough details about the subject-matter of the case to present a story that holds together." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010).

However, the plaintiff does not need to plead facts that establish each element of a cause of action and, "[a]t this stage the plaintiff receives the benefit of imagination, so long as the hypotheses are consistent with the complaint." *Sanjuan*, 40 F.3d at 251. Even if the truth of the facts alleged appears doubtful, and recovery remote or unlikely, the court cannot dismiss a complaint for failure to state a claim if, when the facts pleaded are taken as true, a plaintiff has "nudged their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 555, 570.

## III. DISCUSSION

The City first seeks judgment on the pleadings as to Count III, plaintiff's claim under *Monell*, 436 U.S. 658. The City argues that the complaint does no more than recite the elements of municipal liability. The City further claims that there is no vicarious liability under Section 1983, and that it may be held liable only if the deprivation of Mitchell's constitutional rights was caused by an official policy or custom. *Monell*, 436 U.S. at 694; *Small v. Chao*, 398 F.3d 894, 898 (7th Cir. 2005). A policy or custom may be established in one of three ways: an express policy that causes a constitutional deprivation when enforced; a widespread practice that, although not authorized by written law or express policy, is so permanent and well settled as to constitute a custom or usage with the force of law; or a constitutional injury caused by a person with final policymaking authority. *Abbott v. Village of Winthrop Harbor*, 205 F.3d 976, 981 (7th Cir.

2000). Conclusory allegations that merely recite those elements are not entitled to the presumption of truth. *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011); *Iqbal*, 556 U.S. at 678.

The City's statement of the law is correct. However, the court finds that plaintiff's allegations, while not detailed, are sufficient to state a *Monell* claim. Plaintiff has plausibly alleged that a group of six or seven officers took a surrendering man to the ground, held him face-down for more than a minute and a half while he told them repeatedly that he could not breathe and audibly hyperventilated, refused his request to be stood up until the search of his person was complete, declined to summon medical aid after he said that he was about to faint, and continued to question him after he disclosed that he was asthmatic and short of breath. (DE # 1 ¶¶ 10-18.) That man died of a lack of oxygen to the brain as a result. (*Id.*) Plaintiff alleges that this conduct was caused by the City's failure to train and supervise its officers on the risks of prone restraint and positional asphyxia, particularly as to persons with respiratory conditions, and by its failure to implement any protocol for an immediate medical response to complaints of difficulty breathing; that these deficiencies amounted to deliberate indifference; and that they were the moving force behind the officers' violations. (*Id.* ¶¶ 32-34.)

These allegations are sufficient at this stage. The complaint does not simply affix the word "policy" to an unspecified failing. It identifies the particular training the City is said to have omitted and ties that omission to the particular conduct said to have killed Mitchell. *See City of Canton v. Harris*, 489 U.S. 378, 388-89 (1989). The allegation

that this conduct was consistent across a half-dozen officers, none of whom is alleged to have intervened at any point during the encounter, further allows an inference of a training deficiency. *Cf. Strauss v. City of Chicago*, 760 F.2d 765, 770 (7th Cir. 1985).

The authorities the City cites in reply do not compel a different result. *Connick v. Thompson*, 563 U.S. 51 (2011), addresses the showing required to establish municipal liability, not the showing required to plead it. *Flores v. City of South Bend*, 997 F.3d 725 (7th Cir. 2021), held that the allegations before it sufficed to plead deliberate indifference, *id.* at 733, but it did not hold that allegations of that particular kind are the only ones that will do. Whether plaintiff can ultimately demonstrate a pattern of similar constitutional violations, or an obvious risk to which the City's policymakers were deliberately indifferent, is a question for another day. *See Bd. of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 405 (1997) (rigorous standards of culpability and causation apply to claims premised on inadequate policies); *Gill v. City of Milwaukee*, 850 F.3d 335, 344 (7th Cir. 2017). For now, the request to resolve the matter at the pleadings stage is denied.[3]

Second, the City argues that Count V, plaintiff's state law claim that the City negligently trained and supervised its officers, is barred by the Indiana Tort Claims Act,

---

[3] Plaintiff also argues that the City's refusal to release body-worn camera footage, dashcam footage, reports, and coroner's records, in asserted violation of Indiana's Access to Public Records Act, Ind. Code § 5-14-3-1 *et seq.*, independently supports *Monell* liability. The court need not delve into this matter today because Count III states a claim on plaintiff's training and supervision theory. The viability of plaintiff's remaining theories as to Count III is best sorted out on a more developed record.

which immunizes a governmental entity from any loss resulting from the performance of a discretionary function. Ind. Code § 34-13-3-3(a)(7). The court agrees.

Indiana law has long treated the management of government employees as a discretionary function. In *Foster v. Pearcy*, the Indiana Supreme Court affirmed the dismissal of a claim that a prosecuting attorney had negligently hired and supervised a deputy, holding that "[c]learly the employment and supervision of deputies and employees in governmental offices . . . is a discretionary function." 387 N.E.2d 446, 450 (Ind. 1979).

Plaintiff retorts that *Foster* was superseded by *Peavler v. Board of Commissioners of Monroe County*, 528 N.E.2d 40 (Ind. 1988), which adopted the planning-operational test for discretionary function immunity, and that Count V pleads operational rather than planning-level negligence. However, Indiana's courts have not read *Peavler* that way. In *Cantrell v. Morris*, the Indiana Supreme Court discussed both decisions and reaffirmed *Foster*, recognizing only a narrow exception for the termination of public employment in violation of clearly established free speech rights. 849 N.E.2d 488, 495-96 (Ind. 2006). Plaintiff alleges no such claim here. The Indiana Court of Appeals has likewise continued to apply the immunity in the years since *Peavler*. See *Lamb v. City of Bloomington*, 741 N.E.2d 436, 441 (Ind. Ct. App. 2001) (claim of negligent instruction and training of firefighters); *Kerwood v. Elkhart County Sheriff's Dep't*, 233 N.E.3d 1030, 1042 (Ind. Ct. App. 2024) (claim that entity failed to properly train and supervise employees with respect to the protection of expunged and sealed records). Federal courts applying Indiana law have reached the same conclusion. *See Mwangangi v. Nielsen*, 525 F. Supp.

3d 869, 923 (S.D. Ind. 2021); *Smith v. Ciesielski*, 975 F. Supp. 2d 930, 943 (S.D. Ind. 2013); *Doe v. Barber*, No. 3:23-cv-658-DRL-SJF, 2025 WL 2084672, at 4 (N.D. Ind. July 23, 2025).

The two decisions plaintiff offers in support of an operational-negligence exception do not establish one. *Mwangangi* held that the plaintiff's negligent training and supervision claim was barred by the Act, 525 F. Supp. 3d at 923, and *Smith* rejected the argument that a failure to train was a non-immunized matter of implementing departmental policy, 975 F. Supp. 2d at 943. Both applied the immunity; neither carved out an exception from it. Accordingly, the City's motion is granted as to Count V.

Finally, the City argues that the court lacks subject matter jurisdiction over Count VI, plaintiff's state law indemnification claim, because the claim is unripe. A claim is not ripe if it "rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (internal quotation marks omitted). An unripe claim is one over which the district court lacks subject matter jurisdiction. *Wisconsin Cent., Ltd. v. Shannon*, 539 F.3d 751, 759 (7th Cir. 2008). Where, as here, a defendant mounts a facial challenge to jurisdiction, the court looks to the complaint to determine whether a basis for federal jurisdiction has been sufficiently alleged. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009); *see also Estate of Eiteljorg ex rel. Eiteljorg v. Eiteljorg*, 813 F. Supp. 2d 1069, 1073 (S.D. Ind. 2011).

Count VI seeks indemnification from the City for any judgment entered against the individual officers for acts or omissions within the scope of their employment. No such judgment has been entered, and plaintiff concedes that his claim is contingent

upon one. (DE # 14 at 4.) A claim under Indiana's public employee indemnification statute does not ripen until a judgment has been rendered against the employee; until then it is speculative. *See Sowell v. Dominguez*, No. 2:09-cv-47, 2011 WL 294758, at 14 (N.D. Ind. Jan. 26, 2011). The Seventh Circuit has repeatedly cautioned that decisions about indemnity should be postponed until the underlying liability has been established, because a declaration that one party must indemnify another if some contingency comes to pass has an advisory quality. *Lear Corp. v. Johnson Elec. Holdings, Ltd.*, 353 F.3d 580, 583 (7th Cir. 2003); *see also Woodley v. Zabrecky*, No. 2:17-cv-450-TLS, 2019 WL 2270377, at 2 (N.D. Ind. May 24, 2019).

Plaintiff's contrary arguments are unavailing. That the court could exercise supplemental jurisdiction under 28 U.S.C. § 1367(a) over a claim sharing a common nucleus of operative fact with the federal claims is beside the point; supplemental jurisdiction is a statutory grant, and it cannot manufacture the case or controversy that Article III independently requires. Nor do considerations of judicial efficiency supply what Article III demands. *See Mt. Vernon Fire Ins. Co. v. Jane Child Care, Inc.*, 2025 WL 1651231, at 2 (N.D. Ill. June 10, 2025). Although plaintiff asserts that courts in this Circuit routinely permit indemnification claims to proceed alongside the underlying liability counts, he identifies no decision holding such a claim ripe in the absence of a judgment.

Plaintiff's alternative suggestion is that the court stay Count VI rather than dismiss it. However, the Seventh Circuit has squarely held that the proper disposition of an unripe indemnification claim is dismissal, not a stay. *Med. Assurance Co. v.*

*Hellman*, 610 F.3d 371, 375 (7th Cir. 2010) ("The district court was aware that the duty-to-indemnify claim was not ripe, but rather than dismiss that aspect of the case, it included it in the stay that was issued. The proper disposition, however, would have been to dismiss."). Count VI is therefore dismissed without prejudice for lack of subject matter jurisdiction. Should judgment be entered against one or more of the individual officers, nothing in this order forecloses plaintiff from seeking indemnification at that time.

**IV. CONCLUSION**

For the foregoing reasons, defendant City of Lafayette's motion for partial judgment on the pleadings is **GRANTED, in part, and DENIED, in part.** (DE # 10.) The motion is **DENIED** as to Count III, but **GRANTED** as to Count V. Count VI is **DISMISSED WITHOUT PREJUDICE** for lack of subject matter jurisdiction.

**SO ORDERED.**

Date: September 8, 2026

s/James T. Moody
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT